Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT
for the

Southern District of Georgia

_____ Division

| | |
|---|---|
| SIDNEY RENARD PARRISH | Case No. **C V 6 2 3   0 7 0** |
| | *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)* ☑ Yes ☐ No |
| –v– | |
| GEORGIA STATE PATROL | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

**1**

## I.    The Parties to This Complaint

### A.    The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | SIDNEY RENARD PARRISH |
| Address | 1207 MILLEN HILTONIA RD |
| | SYLVANIA                    GA                    30467 |
| | *City*                       *State*                *Zip Code* |
| County | SREVEN |
| Telephone Number | (912) 829-7933 |
| E-Mail Address | sparr325@earthlink.net |

### B.    The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | GEORGIA STATE PATROL |
| Job or Title *(if known)* | POLICE AGENCY |
| Address | 329 ROCKY FORD RD |
| | SYLVANIA                    GA                    30467 |
| | *City*                       *State*                *Zip Code* |
| County | SREVEN |
| Telephone Number | (912) 564-2018 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | THOMIS BOND |
| Job or Title *(if known)* | PATROL OFFICER |
| Address | 329 ROCKY FORD RD |
| | SYLVANIA                    GA                    30467 |
| | *City*                       *State*                *Zip Code* |
| County | SCREVEN |
| Telephone Number | (912) 564-2018 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

**2**

**Defendant No. 3**

| | | | |
|---|---|---|---|
| Name | STEPHEN SPIRES | | |
| Job or Title *(if known)* | PATROL OFFICER | | |
| Address | 329 ROCKY FORD RD | | |
| | SYLVANIA | GA | 30467 |
| | *City* | *State* | *Zip Code* |
| County | SCREVEN | | |
| Telephone Number | (912) 564-2018 | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity    ☑ Official capacity

**Defendant No. 4**

| | | | |
|---|---|---|---|
| Name | | | |
| Job or Title *(if known)* | | | |
| Address | | | |
| | *City* | *State* | *Zip Code* |
| County | | | |
| Telephone Number | | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity    ☐ Official capacity

## II.    Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☑ State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?
Plaintiff was subjected to Color of law violations by Georgia State Patrol officers Bond and Spires which violated Plaintiff's civil rights under the Fourth and Fourteenth Amendments. Defendant's actions show a custom and practice of false arrests, falsification of documents/reports and manipulation of evidence. Georgia State Patrol through Defendants Bond and Spires willfully and maliciously deprived Plaintiff of his right to feel safe and secure in his own person simply because plaintiff chose to drink one beer.

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

**3**

D.  Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

Georgia State Patrol officers Thomis Bond (Defendant No.2) and Stephen Spires (Defendant No.3) falsified arrest reports, fabricated and/or manipulated evidence and omitted pertinent information in order to justify two separate arrests of Sidney R. Parrish (Plaintiff) for purportedly driving under the influence. Also, Georgia State Patrol through defendants Bond and Spires willfully deprived Plaintiff of his physical freedom and liberties under the Georgia state constitution, and Georgia Code § 51-7-20 false arrest.

## III.  Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.  Where did the events giving rise to your claim(s) occur?

1st arrest took place in Sylvania Ga. Screven County on the rural roads of Bascom and Bethel
2nd arrest took place in Perkins Ga. Jenkins County on the rural roads of Bascom and Beaver Dam
3rd arrest took place in the town of Sylvania Ga. Screven County at El Cheapo gas station.

All of these are within the same general area within fifteen miles of each other.

B.  What date and approximate time did the events giving rise to your claim(s) occur?

1st arrest took place on January 2, 2023      6:40 PM

2nd arrest took place on February 3, 2023     9:20 PM

3rd arrest took place on September 11, 2023, 3:54 PM

C.  What are the facts underlying your claim(s)?  *(For example:  What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*

### ARREST ONE

1.  At approximately 6:40 pm while traveling on Bascom Road, Plaintiff approached the intersection that

meets Beaver Dam Rd; this is a  three way stop.  Plaintiff slowed his vehicle to check for any traffic then

continued to turn left still on Bascom Rd. To the right out of the darkness plaintiff noticed the flashing

lights of a police vehicle and realized he was about to be pulled over. Plaintiff pulled his vehicle over,

turned on the overhead light, and took out his driver's license. See pg 7. CONTINUED FROM III (C)

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

36. Plaintiff suffers from and takes medication for depression, anxiety and psychosis. After being prescribed the

medication Seroquel in 2020, Plaintiff experienced a marked improvement in his condition and quality of life.

Plaintiff slowly began to regain an ability to focus on and accomplish other tasks, such as studying to maybe go back to school, and also writing and playing music. Which Plaintiff had not been able to do for  several years.

Plaintiff considered 2022 to be his most productive year since the onset of his illness in 2006.  From

2020 up until the time of Plaintiff's encounters with Georgia State Patrol officers, Plaintiff had not sought

treatment at a hospital in over three years. It was only after Plaintiff's false arrests by GSP officers, and the

ordeal that ensued, that Plaintiff began to suffer relapses of the above mentioned illnesses. Plaintiff has had to

seek on several occasions treatment at emergency rooms and specialist for which Plaintiff  incurred an

unexpected financial burden.    See page 19.  Continued From  IV INJURIES

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

Plaintiff is seeking relief in the amount of $150,000. This would constitute: (Compensatory Damages), Plaintiff

suffered financial damages directly as a result of Defendants actions which under false pretenses brought about

penalties against Plaintiff, in the form of jail bonds, traffic tickets, traffic school, fines and eventually probation &

fees. Plaintiff also incurred financial damages as a result of needing to seek medical attention after relapsing into

psychological illness. This resulted in a diminishing of plaintiff's emotional and physical health.

(Pain and Suffering), The two false arrests of Plaintiff conspicuously occurred during a time when Plaintiff was

experiencing ongoing passive, and in some cases active harassment in the community. Defendants Bond and

Spires actions coincided with, and plausibly occurred "in agreement" with this harassment, which served to

prolong Plaintiff's diminished state of psychological and physical well being/See page 20. Continued From Relief

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.     Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.     For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:     12/03/23

Signature of Plaintiff

Printed Name of Plaintiff     Sidney Parrish

### B.     For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Address

|                        | City | State | Zip Code |
| ---------------------- | ---- | ----- | -------- |

Telephone Number

E-mail Address

Print          Save As...          Add Attachment          Reset

## <u>CONTINUED FROM III (C)</u>

2. Plaintiff's vehicle was approached by GSP officer Thomis Bond (Defendant No.2) who informed Plaintiff that he had run the stop sign, and asked him why. Plaintiff responded *"you just don't expect to see anyone there "*  it is a three way stop visible from all directions. Then without prompt or explanation Defendant No.2 asked Plaintiff *"how much have you had to drink?"*. Plaintiff responded that he had drank a beer. Defendant No.2 asked for Plaintiff's license and requested that he exit the vehicle, which Plaintiff did.

3. While standing in front of the police vehicle on the side of the road, Plaintiff agreed to perform the Standard Field Sobriety tests. During the lateral gaze test Plaintiff informed Defendant No.2 that he was moving his hand outside of Plaintiff's field of view, Plaintiff did not complain further. The ground that Plaintiff was standing on had recently been scraped or plowed by heavy machinery.  Plaintiff attempted to comply with the instructions given by Defendant No.2 for the walk and turn test. Plaintiff complained that the ground was not level, Defendant No.2 responded " `this is the best we've got"`. Plaintiff stumbled several times during the walk and turn test and complained throughout that the ground was uneven.

4. Plaintiff refused to submit to a breathalyzer test because at that point Plaintiff did not trust Defendant No.2.  Plaintiff was arrested and taken into custody where he voluntarily submitted to a blood test and was booked into Screven County Jail. The blood test later revealed that Plaintiff had a blood alcohol content (BAC) of .032 See *Exhibit 1, pg.11*

7

# FALSEHOODS & FABRICATIONS

5. After obtaining the arrest report, Plaintiff discovered that it contained blatant falsehoods that described plaintiff as having bloodshot watery eyes, and a slow speech pattern. Though plaintiff had complained several times during the walk and turn test that the ground was uneven , Defendant No.2 wrote in the arrest report quote,  **`"I asked Mr. Parrish if we could both agree that the road we were on was flat and level"`**. *See Exhibit 1, pg. 8, paragraph 3.* The test did not take place on the road; but on the side of the road, in front of the police vehicle. Defendant No.2 went on to describe in the arrest report how Plaintiff failed all tests.


6. Plaintiff is a former (ICE) officer , and was aware that he should document and notarize these events as they really happened as soon as possible. Which is what Plaintiff did on January 13, 2023, eleven days after the arrest.— See Exhibit 1, entitled: *Memorandum— Traffic Stop and Arrest on January 2, 2023.*


7. The booking form from Screven County Jail describes Plaintiff as not appearing to be under the influence of alcohol or drugs — *See Exhibit 1, pg. 10.*  Plaintiff obtained the police video of this arrest which corroborates Plaintiff's account of what happened. Plaintiff also took photos of the plowed ground two days after the arrest. *See exhibit 1, Photos.*
This case was later dismissed because an essential witness *(the officer)* could not be located.

# ARREST TWO

8.  On the night February 3, 2023 plaintiff drove into town, (Sylvania), about fifteen miles from his residence to a Dollar Store. After leaving the Dollar Store Plaintiff stopped at a gas station and bought a six pack of beer. Plaintiff stood on the side of the gas station near a trash can and drank a beer while listening to an unfinished musical composition he was working on, as it played on his cell phone. After finishing the beer, Plaintiff left the gas station to return home, At approximately 9:20 pm while traveling on Perkins Hiltonia Road, Plaintiff was traveling in the direction towards the intersection of Beaver Dam road. In the distance Plaintiff could see what looked like several police vehicles with lights flashing positioned on either side of the road. Because of the *Move Over Law* that requires motorists to avoid police and emergency vehicles on the sides of the road, Plaintiff positioned his vehicle over the center line as he approached. There appeared to be several officers from different agencies.

9. As Plaintiff stopped, GSP officer Stephen Spires (Defendant No.3) approached the driver's side window and said something to the effect of ***"you crossed over the line, were you trying to run me over?"*** Plaintiff believed that Defendant No.3 was being humorous, then explained that he was just trying to avoid the police vehicles.  Defendant No3 asked Plaintiff for his driver's license.  Plaintiff explained that he did not have a license and was driving on a permit and the status of his license would be decided in a future court case, Plaintiff then gave Defendant No.3 his Georgia Weapons Carry license.

**9**

10. Defendant No.3 then noticed the bag containing the beer on the passenger seat and asked Plaintiff how many had  he drank . Because of the experience of being arrested in the prior month, after admitting to drinking a beer, Plaintiff told Defendant No.3 that he had not had any. Plaintiff then admitted to drinking one beer at the gas station because Defendant No.3 could see that one was missing. Defendant No.3 then instructed Plaintiff to park his vehicle and meet him in front of the police vehicle, across the intersection on the other side of the road, which is what Plaintiff did.

11. While standing in front of the police vehicle, Plaintiff agreed to perform the Standard Field Sobriety tests. When asked, Plaintiff also informed Defendant No.3 that he sometimes suffers from gout flare-ups but he was willing to do the tests, and that he also takes psych medication. Plaintiff performed several sobriety tests including, more than one lateral gaze test, walk and turn, one leg stand, counting to thirty with eyes closed and head tilted back. All of which Plaintiff performed satisfactorily considering he was suffering from a gout flare-up at the time; Plaintiff's gout condition was left out of the arrest report. Plaintiff also submitted to a breathalyzer test.

12. After about one half hour of testing and retesting,  Defendant No.3 informed Plaintiff that he was being arrested for driving under the influence of his medication and alcohol combined. Plaintiff asked if he had blown a positive on the breathalyzer test. Defendant No.3 Responded, " ***you only blew a .02 but it's your medication that is causing the problem.*** Plaintiff asked, " what exactly is the medication doing ?" Defendant No.3 responded, ***" it's affecting your reflexes "***. Plaintiff was five miles away from home. Plaintiff refused the blood test because it would permit him to request an administrative license suspension hearing, allowing him to refute the charges early; it would decide only if Plaintiff's license would be suspended or not, the actual DUI trial would come afterward.

**10**

# Falsehoods, Omissions, & Video Manipulation

13. After obtaining the arrest report, Plaintiff discovered that it contained blatant falsehoods that described Plaintiff as having bloodshot watery eyes, as being withdrawn and having a mumbled speech pattern.— Even though Plaintiff had explained that he was simply trying to avoid the police vehicles when he approached with his vehicle centered over the center line, the impression was given in the arrest report that Plaintiff could not maintain his lane due to intoxication. Plaintiff was described as having failed all sobriety tests. The check of Plaintiff's eyes also described Plaintiff as being nystagmic. The booking form from Jenkins County Jail describes Plaintiff as not appearing to be under the influence of alcohol or drugs. *See Exhibit 2. Pg 14.*

14. Plaintiff was aware that he needed to document and notarize these events as soon as possible. Which is what Plaintiff did on February 13, 2023, ten days after the arrest.— *See Exhibit 2. entitled: Traffic Stop and Arrest February 3, 2023*

## Video Manipulation

15. Georgia State Patrol uses the WatchGuard 4re video system, which allows for a significant amount of control over how a video is saved and presented, such as, high or low resolution video, volume level etc. Over two months after the arrest when Plaintiff received and viewed the police video, it was discovered that the field sobriety test had been conducted in such a way that made it very difficult to see; because the officer, (Defendant No.3), turned off the overhead lights.

**11**

16. The tests were conducted in the dark and to the far left, in some cases barely visible or not visible at all. The video was saved with the volume turned way down to the point it was barely audible, which coincidentally, would help Defendant No.3, because it would allow him to claim that Plaintiff's speech was mumbled and slurred.  Plaintiff was able to readjust the video volume to where Plaintiff's speech pattern can be heard clearly as , not slow, mumbled or slurred as described in the arrest reports.

## Administrative License Suspension Hearing,

17. On June 9, 2023 Plaintiff attended the requested administrative license suspension hearing along with GSP officer Spires (Defendant No.3).  The case was presided over by Administrative Judge John Fry.— Defendant Spires testified as stated above that, Plaintiff failed to maintain his lane on approach, had slurred speech, bloodshot watery eyes, and of course failed all of the field sobriety tests.

18. Plaintiff testified by first giving a brief description of his actions and then explained that the medication he takes does not cause the type of reactions described by Defendant No.3. Plaintiff then read from portions of the notarized memorandum that he had written to document the events surrounding the arrest. *See Exhibit 2.*— Plaintiff then showed video clips of the arrest with the volume turned back up. Including a clip from the very beginning,( *before Defendant No.3 turned the lights off).* This clip showed Plaintiff's movements and speech to be normal. When Plaintiff posed the question to Defendant No.3,  if what he heard on the video was "**mumbled speech?**",  Defendant No.3 did not appear to have an answer. — Judge Fry then intervened to move the process along, and thereby purposely allowing Defendant No.3 to avoid answering the question; (*there is audio of this hearing.*)  Court was adjourned with a decision to be rendered within five days.

# Administrative Decision

19. On June 13, 2023 the administrative court rendered a decision against Plaintiff, and as a result, Plaintiff's license was suspended. The reasoning behind the judge's decision appears to rely solely on the word of Defendant No.3.— In regards to the video that showed Plaintiff's speaking voice was no different on the video than it was in court, Judge Fry wrote: "***Although the court — did not have the same opportunity to observe the petitioner as the arresting officer had, the court could not detect a difference in — speech pattern at the hearing versus during the investigation"***. *See Exhibit 2. Pg15. paragraph 2.* — Judge Fry also wrote: "***It was difficult to see petitioner's feet for the entire test. It was not clear- [but]-Even if the video showed that the officer incorrectly scored two out of four clues, which it does not show , two clues is sufficient to show impairment.*** "*See Exhibit 2. Pg15. paragraph 4*

20. What the administrative court's written decision seems to suggest is,  Plaintiff is disputing as to whether or not the elements ascribed to Plaintiff by Defendant No.3 in the arrest report, constitute probable cause. This is not the case. "Yes", the elements ascribed to Plaintiff by Defendant No.3  "do" constitute probable cause. But what Plaintiff was arguing was,  those elements are not the truth.

21. Plaintiff provided police video evidence that showed Plaintiff's demeanor and speech did not fit the description in the arrest report.  Defendant No.3 is then seen turning off the overhead lights, which greatly diminished the clarity of the video; this evidence was completely ignored. All other evidence,  to which the court admitted several times in its written decision that, "**It could not see**", was then taken as truth.— Never once did Defendant No3 ever seek to reference his own "*police video*" to corroborate a single one of his claims. Both Defendants, Spires and also Bond, should be afforded an opportunity to do this, in federal court.

22. The administrative court appears to be saying, on the one hand: *the court was not there to observe, therefore , the court cannot judge.*— But then on the other hand, it is also saying: *Even if certain elements of the officer's claims are questionable, or even become unusable; everything else can still be used*

Even though the court was not there to observe *those* elements either. And if the officer chooses to make sure that nothing can be determined from the video ? (Oh Well.)  This is clearly an unequal and biased application of standards, at least as it pertains to judging what is truthful or not.

## DUI CASES

23. It is a highly unlikely coincidence that Plaintiff was arrested twice for supposed DUI with  both officers describing plaintiff as being visibly intoxicated with bloodshot watery eyes and a slow and mumbled  speech pattern. Both arrest videos contradict the arrest reports, with two booking forms, from two different jails in different counties, that describe plaintiff as, not appearing to be under the influence of anything when plaintiff was booked in.  The blood test and breathalyzer results of the two arrests were .032 and .02 respectively, well below the level of being legally intoxicated at .08

24. The first case was dismissed due to the fact that an essential witness; *GSP officer Thomis Bond, (Defendant No2) purportedly* could not be located.  For the second case, on September 25, 2023 Plaintiff pleaded no contest to reckless driving for positioning his vehicle on the center line as he lawfully attempted to avoid police vehicles on the sides of the road. Plaintiff was never convicted of the charges he was arrested for, (DUI), but, the penalties and punishments associated with a DUI conviction were still imposed.

**14**

25. Because plaintiff admitted to drinking a beer, Defendants No.2 and No.3 (especially),  saw an easy opportunity to use their positions of authority to arrest Plaintiff for driving under the influence.  Defendant No. 3 attributed Plaintiff's supposed intoxication to Plaintiff's medication. Without having any prior knowledge as to whether or not the medication is even capable of causing the conditions ascribed to it in the arrest report. It is the equivalent of suggesting that Tylenol causes nystagmus and slurred speech. Plaintiff did not even have to tell Defendant No.3 that he takes medication.

# RELEVANT BACK STORY

26. In 2021 Plaintiff obtained a Georgia Weapons Carry license and began to open carry a side arm. Plaintiff also hung an American flag from the rear view mirror in his vehicle. It was after these actions that Plaintiff began to experience what can be described as passive harassment while in public, *ie,* smirks, giggles, funny looks etc. This became a common occurrence for over a year. Then in late December 2022 there was an incident of open harassment when, while Plaintiff was driving on rural Bascom Rd in Sylvania, heading towards town. A pickup truck slowed down in front of Plaintiff's vehicle. As Plaintiff attempted to go around the truck, the driver moved over to block Plaintiff.  Plaintiff then sped up and drove on the shoulder to pass the truck, and continued on to town.

27. It was not long after this incident that on January 2, 2023 Plaintiff encountered Georgia State Patrol officer Thomis  Bond (Defendant No.2) on Bascom Rd, and Plaintiff was arrested for allegedly driving under the influence. *See Exhibit 1. Traffic Stop & Arrest January 2 2023*

28. One month later, on February 3, 2023, Plaintiff was arrested again for allegedly driving under the influence. This time by Georgia State Patrol officer Stephen Spires, (Defendant No.3). This took place approximately eight miles from the first arrest. Both arrest reports contained falsehoods and fabrications.

# PSYCHOSIS INCIDENT

29. In early July 2023 Plaintiff suffered from a sudden onset of severe psychosis, which included hallucinations. Plaintiff discovered a brown chemical substance that had been placed on the back seat of his vehicle, which gave off fumes. Plaintiff recalled noticing a strange odor just before becoming ill, but assumed that something had spilled in his vehicle, and he would clean it out later. The chemical substance is what caused Plaintiff's psych medication to stop working and it also precipitated the onset of psychosis and hallucinations. Plaintiff showed the suspicious substance to a Sylvania police officer before being transported to the hospital. No follow up was made on the chemical substance by law enforcement. Plaintiff was evaluated at Screven County Hospital in Sylvania then transported to Saint Simons Behavioral Health near Brunswick Ga. *See Exhibit 2. pg18. Treatment For Psychosis*

30. Albeit plausible, it t is not the intention of Plaintiff to conclude that  any defendant in this complaint has any personal connection to any other incidents of harassment experienced by Plaintiff.  Plaintiff is merely pointing out that the actions of Defendants No.2  and No.3  fit into, and  contributed in a major way, to a broader scope of events which harmed plaintiff.

**16**

## ARREST THREE

31. On September 11, 2023 Plaintiff drove to the Sylvania Court House to pick up a replacement Georgia Weapons Carry license, because Plaintiff had lost his wallet during a hospital emergency room visit. This would be Plaintiff's only form of identification. After leaving the court house Plaintiff went to El Cheapo gas station to get gas. As Plaintiff pulled up to the gas pump, a Georgia State Patrol vehicle pulled in behind Plaintiff's vehicle with lights and siren blaring. Plaintiff exited his vehicle and began walking toward the  rear. Plaintiff could see and hear the officer, from inside the vehicle, pointing and ordering him to stand at the front bumper of the police vehicle; Plaintiff stopped where he was.

32. When the officer exited the vehicle and approached Plaintiff,  Plaintiff  asked in a surprised and confused manner, "what happened ?" The officer informed Plaintiff that he had not been wearing a seatbelt. Plaintiff explained to the officer that because he knew he was coming to get gas, he had not put his seatbelt on right away. The officer asked Plaintiff for his driver's license to which Plaintiff responded that he did not have a license and his license was suspended. Plaintiff gave the officer his weapons carry license and the officer went back and sat in the vehicle with the door open.

33.  At that time another GSP patrol vehicle arrived. GSP officer Stephen Spires (Defendant No.3) exited that vehicle with his head down as if attempting to obscure his face with the brim of his hat. — Defendant No.3 walked over and stood in the open car doorway and conversed with the other officer, keeping his head down and face hidden the entire time. The two officers conversed for a short while, after which time Defendant No.3, with his head still down, walked back to his vehicle and got in.

**17**

34. The other officer then approached Plaintiff and informed him that he was being arrested for driving on a suspended license and a seatbelt violation. Plaintiff, very angry and agitated turned around with his hands behind his back and said, sarcastically, something to the effect of "ok, let's go to jail !" Plaintiff was arrested and taken to Screven County Jail.

35. As a former federal officer of twenty years in Miami, Plaintiff's professional image of Georgia State Patrol has become that of,
(*at the risk of degrading this filing*) "**spoiled, undisciplined, punks, with badges**", who carry themselves with an attitude of; **"heehee haha, look at what I can get away with."** There was also a complete lack of any professional standards that were being followed, as can be seen by the fact that, one officer does this, and the other officer does that. When taken all together, a custom and practice are clearly evident by the fact that both Defendants, Bond and Spires, chose to falsify their arrest reports. This shows an intentional effort to construct a false narrative around Plaintiff, with malicious, **"*trumped-up*"** charges. Which, if claimed to be true; should be easily explained in court.

(Return to page 1. section IV. Injuries)

**18**

# CONTINUED FROM IV INJURIES

37. Plaintiff could not afford an attorney, and had to figure out how to mount a defense for himself. The legal penalties such as jail bonds, traffic tickets, traffic school and eventually fines and probation, took away the finances that Plaintiff was setting aside to pursue other goals. Plaintiff was unable to move forward towards improving his own standing or to pursue any of the other possible opportunities that had been before him.

38. By not having the wherewithal or even the ability psychologically to focus on and finish a long anticipated personal music project, resulted in the loss of a potential revenue stream for Plaintiff.  Plaintiff was also unable to maintain any motivation or focus towards studying (math, algebra etc.) as Plaintiff had intended to "brush up " to return to school.  This, coupled with the continued and ongoing passive and active harassment, Plaintiff once again began to suffer from severe depression and anxiety. This cycle of depression regularly immobilized Plaintiff, which resulted in Plaintiff's quality of life being diminished.

39. Plaintiff's driving record and auto insurance was also needlessly adversely affected and regular expenses such as home owners insurance and property taxes etc. were put in jeopardy.

40.  Although Plaintiff's psychological condition and outlook had begun to improve in 2020; for the entirety of 2023 after the arrests and other incidents, Plaintiff had been returned to a state of merely existing. Pain and Suffering also occurred as a result of Plaintiff being arrested over and over again, seemingly at the whim of any given police officer. This resulted in Plaintiff  being publicly humiliated. (Return to page 1. section V. Relief)

## CONTINUED FROM V "RELIEF"

Georgia State Patrol is liable because of a willful lack of oversight. It is this willful lack of oversight that has allowed a practice to exist, where officers feel safe in disregarding the rights of certain citizens. The actions and attitudes of both Defendants No.2 and No.3 showed a complete and utter confidence that they would be insulated from any possibility of consequences.

(Punitive Damages) should constitute the bulk of any relief granted. Not only to punish and deter similar behavior; but also for what it would signify on a broader level. The message that was being transmitted to Plaintiff from a variety of sources was; *"You are, no one"*.  This message was meant to demonstrate to Plaintiff that, at any given moment, control of Plaintiff's life could be arbitrarily seized upon, and there is absolutely nothing that Plaintiff can do about it.

Georgia State Patrol through the actions of Defendants Bond and Spires transmitted this message. This message was then transmitted again by Administrative Judge John Fry, who, in the face of contradictory and potentially exculpatory evidence, chose to rule against Plaintiff on the notion that, " *he wasn't there.*"

Plaintiff is also aware that it is the fact that many in the community  actually support and condone the type of behavior exhibited by Defendants No.2 and No.3. This more than anything else, is most likely what influenced Defendants choice of actions, and is also what contributes to a general, willful lack of oversight by Georgia State Patrol, as it pertains to protecting the rights of some citizens.

**20**

Finally, in filing this complaint in such granular detail, Plaintiff seeks to display for the court some of the absolute absurdities experienced by *some,* when seeking equal protection under the law. It has historically been the federal courts that have stepped in during situations such as this to accomplish mainly two things, (a).To solidify the fact that certain rights *do* exist and that they apply to *all*. And (b).To take corrective action when those rights have been willfully infringed upon. It is in that vein that Plaintiff respectfully requests that this relief be granted, and any other relief or injunctive action that the court may deem appropriate, so as to send this message once again; resoundingly.