IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| SIDNEY RENARD PARRISH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 623-070 |
| ) | |
| GEORGIA STATE PATROL; THOMIS ) | |
| BOND; and STEPHEN SPIRES, ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff commenced the above-captioned case *pro se* and is proceeding *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984).

I.   BACKGROUND

  A.   Factual Background

In his complaint, Plaintiff names as Defendants: (1) Georgia State Patrol ("GSP"), (2) Officer Thomis Bond, and (3) Officer Stephen Spires. (Doc. no. 1, pp. 2-3.) Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows. This complaint arises out of three traffic stops and arrests of Plaintiff by GSP officers on January 2, 2023, February 3, 2023, and September 11, 2023. (Id. at 4.)

  1.   **The First Arrest**

The first traffic stop and arrest in January 2023 began with Plaintiff running a stop sign. (Id. at 7.) Officer Bond conducted the traffic stop and asked Plaintiff why he ran the stop sign

and how much he had to drink.  (Id.)  Plaintiff responded, "You just don't expect to see anyone there" and admitted to drinking a beer.  (Id.)  Plaintiff agreed to undergo field sobriety tests but refused to submit to a breathalyzer.  (Id.)  Plaintiff failed the sobriety tests, in part because he stumbled during the walk-and-turn test, which he blames on the roadway being uneven because of recent scraping or plowing.  (Id.)  Plaintiff complained the ground was not level and Officer Bond said, "This is the best we've got."  (Id.)

Because he failed the sobriety tests, Plaintiff was arrested for driving under the influence ("DUI"), voluntarily submitted to a blood test, and was later booked into the Screven County Jail.  (Id.)  The police report prepared by Officer Bond contained misrepresentations, including that Plaintiff had bloodshot eyes and a slow speech pattern.  (Id. at 8.)  Though Plaintiff complained about the uneven roadway, Officer Bond wrote in the report that "I asked Mr. Parrish if we could both agree the ground we were on was flat and level."  (Id.)  The test did not take place on the road but on the side of the road in front of Officer Bond's patrol car.  (Id.)

The booking from Screven County Jail shows Plaintiff does not appear to be under the influence of alcohol or drugs.  (Id.)  The criminal docket from Screven County confirms Plaintiff was arrested on January 2, 2023, charged with DUI and failure to stop at a stop sign, and released on bond.[1]  On April 26, 2023, the case was disposed of by order of nolle prosequi because Officer Bond could not be located.  (Id.)

---

[1] See Screven County Criminal Case Docket, available at https://peachcourt.com/search (in "county" select "Screven" and in "search by party name," search for "Parrish, Sidney" open STCR2023000038) (last visited December 18, 2023); see also United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) (noting court may take judicial notice of another court's records to establish existence of ongoing litigation).

### 2. The Second Arrest

The second traffic stop and arrest in February 2023 occurred when Plaintiff was driving home after drinking a beer at a gas station and listening to music. (Id. at 9.) While on the way home, he saw police cars with flashing lights on both sides of the road and moved his vehicle directly over the center line in an attempt to comply with the "move over law." (Id.) During the traffic stop, Officer Spires asked, "Were you trying to run me over?" (Id.) Officer Spires asked for Plaintiff's driver's license and Plaintiff explained he had a permit, and the status of his license would be decided in a future court case. (Id.)

Officer Spires saw the bag containing the beer in the passenger seat and asked Plaintiff how much he had to drink. (Id. at 10.) Because Officer Spires could see a beer missing, Plaintiff admitted to drinking one beer at the gas station and also taking "psych medicine." (Id.) Plaintiff agreed to perform field sobriety tests, informed Officer Spires of his "gout flare-ups," and submitted to a breathalyzer. (Id.) Plaintiff believed he performed all sobriety tests "satisfactorily" considering he was suffering from a flare-up at the time. (Id.)

After an hour and a half of testing and retesting with the breathalyzer, Plaintiff was arrested for driving under the influence of alcohol and medication. (Id.) Officer Spires told Plaintiff that "[He] only blew a .02 but it's your medication that is causing the problem." (Id.) Plaintiff refused to take a blood test because he wanted an administrative license suspension hearing. (Id.) The police report authored by Officer Spired misrepresented that Plaintiff had bloodshot eyes, was withdrawn, and had a mumbled speech pattern. (Id. at 11.) The Jenkins County Jail described Plaintiff as not appearing to be under the influence of alcohol or drugs when booked. (Id.) The body camera footage also appeared to have been manipulated because it was "very difficult to see." (Id. at 11-12.)

On June 9, 2023, Plaintiff attended an administrative license suspension hearing where he and Officer Spires testified about the events of the second arrest. (Id. at 12.) Plaintiff showed the body camera footage where Plaintiff appeared to be moving and speaking normally. (Id.) The administrative judge suspended Plaintiff's license, relying on the testimony of Officer Spires, despite flaws noted concerning Plaintiff's arrest and the body camera footage. (Id. at 13-14.) The court wrote, "[A]lthough the court did not have the same opportunity to observe the petitioner as the arresting officer had, the court could not detect a difference in speech pattern at the hearing versus during the investigation." (Id. at 13.) The court also wrote, "[I]t was difficult to see petitioner's feet for the entire test. It was not clear, even if the video showed that the officer incorrectly scored two out of four clues, which it does not show, two clues is sufficient to show impairment." (Id.) Plaintiff believes the court's decision suggests Plaintiff is disputing probable cause, but he is not. (Id.) Plaintiff asserts that "[Y]es, the elements ascribed to Plaintiff by [Officer Spires] do constitute probable cause. But what Plaintiff was arguing was, those elements are not the truth." (Id.)

Because Plaintiff admitted to drinking a beer during both his first and second arrest, Plaintiff believes Officers Bond and Spires "saw an easy opportunity to use their positions of authority to arrest Plaintiff for driving under the influence." (Id. at 15.) GSP has become "spoiled, undisciplined, punks, with badges who carry themselves with an attitude of heehee, haha, look at what I can get away with." (Id. at 18.) Officers Bond and Spires "chose to falsify their arrest reports." (Id.)

In July 2023, Plaintiff suffered an unspecified psychotic episode and was treated at Saint Simons Behavioral Health near Brunswick, Georgia. (Id. at 16.) On September 25, 2023, Plaintiff pled no contest to reckless driving relating to the second traffic stop in which

4

he was originally charged with DUI. (Id. at 14.) Notably, the Jenkins County criminal court docket does not contain any reference to this case.[2]

### 3. The Third Arrest

The third traffic stop and arrest in September 2023 occurred when Plaintiff pulled into a gas station while driving home. (Id. at 17.) An unidentified GSP officer pulled in behind him with the lights and siren activated. (Id.) The officer accused Plaintiff of not wearing a seatbelt. (Id.) Plaintiff admitted he was not wearing a seatbelt and explained he did not bother to wear it because he was stopping to get gas. (Id.) The officer asked for Plaintiff's license, and Plaintiff admitted it was suspended. (Id.)

Officer Spires arrived on the scene, hid his face from Plaintiff, spoke with the officer, and got back into his patrol car. (Id. at 17-18.) The officer arrested Plaintiff for driving on a suspended license. (Id.) The Screven County docket confirms Plaintiff was arrested on September 11, 2023, charged with driving while license suspended and a seatbelt violation, and released on bond.[3] This case remains pending. (Id.)

For relief, Plaintiff requests compensatory and punitive damages. (Id. at 5, 20.)

## II. DISCUSSION

### A. Legal Standard for Screening

The complaint or any portion thereof may be dismissed if it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune to such relief. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). A claim is frivolous

---

[2] See Jenkins County Criminal Case Docket, available at https://peachcourt.com/search (in "county" select "Jenkins" and in "search by party name," search for "Parrish, Sidney") (last visited December 18, 2023).

[3] See Screven County Criminal Case Docket, available at https://peachcourt.com/search (in "county" select "Screven" and in "search by party name," search for "Parrish, Sidney" open STCR2023000969) (last visited December 18, 2023).

5

if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." Wilkerson v. H & S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010) (citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

The court affords a liberal construction to a *pro se* litigant's pleadings, holding them to a more lenient standard than those drafted by an attorney. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). However, this liberal construction does not mean that the court has a duty to re-write the complaint. Snow v. DirecTV, Inc., 450 F.3d 1314, 1320 (11th Cir. 2006). After careful review of the Complaint, the Court finds it is due to be dismissed in its entirety for the reasons below.

### B.     Dismissal of All Official Capacity Monetary Claims

Plaintiff is suing Defendants Bond and Spires in only their official capacities. (Doc. no. 1, pp. 2-3.)  However, the Eleventh Amendment bars official capacity claims against state officials for money damages.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985).  Therefore, Plaintiff's official capacity claims against both Defendants for monetary relief fails as a matter of law.

### C.     Dismissal of Defendant GSP

"The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)).  Arms or agencies of the state are also immune from suit.  See Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) (holding sheriff and police departments not usually considered legal entities subject to suit); Bennett v. Georgia Dept. of Public Safety, 2010 WL 11595156, at * 2 (N.D. Ga. Feb. 16, 2010) ("Eleventh Amendment immunity clearly applies to plaintiff's . . . § 1983 claims against the Georgia State Patrol").  Because the State of Georgia has sovereign immunity against Plaintiff's § 1983 claims, and Defendant GSP is an agency of the state, it should be dismissed from the case.

### D.     Dismissal of All Claims Arising out of First Traffic Stop and Arrest

Plaintiff's claims relating to his first traffic stop and arrest fail on the merits.  Plaintiff does not directly assert any argument that Officer Bond did not have sufficient probable cause to arrest him.  (See generally doc. no. 1.)  Even if he had, the claim would fail.  Plaintiff admitted to running a stop sign, drinking beer, refusing to take a breathalyzer, stumbling during the walk and turn, and being unable to see Defendant's hand during the lateral gaze test.  (Id.

7

at 5-8.) Based even on Plaintiff's admissions alone, Officer Bond had reasonable suspicion for the traffic stop and probable cause to later arrest Plaintiff. See, e.g., Streeter v. Dept. of Public Safety, __F. Supp. 3d__, 2023 WL 5532186, at *7 (S.D. Ga. Aug. 28, 2023) ("[N]o single factor—the presence of alcohol on a person's breath, the failure of a field sobriety test, the appearance of unusual driving, etc.—is sufficient to confer probable cause for a Georgia DUI arrest."); Burnett v. Unified Gov't of Athens-Clarke Cnty., No. 3:08-CV-04, 2009 WL 5175296, at *6 (M.D. Ga. Dec. 22, 2009) (holding officer had probable cause to arrest plaintiff for driving under the influence under Georgia law where plaintiff had "three to four beers," he was stopped for "erratic driving," his breath smelled of alcohol, and he "refused to consent to the state-administered chemical test"); see also Byrd v. State, 523 S.E.2d 578, 579 (Ga. App. 1999) (evidence of odor of alcohol, driver admitting to drinking, and driver's refusal to take chemical test can be sufficient evidence, among other things, to indicate that driver was driving under influence of alcohol).

To the extent Plaintiff attempts to bring a malicious prosecution claim against Officer Bond for this arrest, this claim also fails. To establish a § 1983 malicious prosecution claim, a plaintiff must prove: "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." Luke v. Gulley, 975 F.3d 1140, 1144 (11th Cir. 2020). This case was dismissed in Plaintiff's favor by order of nolle prosequi.[4] Thus, the key factor is if "any Fourth Amendment violation was a 'seizure[ ] pursuant to legal process.'" McAffee v. City of Clearwater, No. 22-12320, 2023 WL 2823392, at *2 (11th Cir. Apr. 7, 2023) (citing Luke, 50 F.4th at 95).

---

[4] See Screven County Docket – case number STCR2023000038.

The Eleventh Circuit has identified "the types of deprivations of liberty that qualify as seizures pursuant to legal process and give rise to § 1983 malicious prosecution claims." McAffee, 2023 WL 2823392, at *2 (citing Williams v. Aguirre, 965 F.3d 1147, 1158 (11th Cir. 2020)). "[A] plaintiff who is subjected to a warrantless arrest but is not detained after the commencement of judicial proceedings generally does not suffer a seizure pursuant to legal process." McAffee, 2023 WL 2823392, at *2 (citing Kingsland v. Cty. of Miami, 382 F.3d 1220, 1235 (11th Cir. 2004)). This is because "the judicial proceeding does not begin until the party is arraigned or indicted." Kingsland, 382 F.3d at 1235 (internal quotations and citations omitted). "Thus, the plaintiff's arrest cannot serve as the predicate deprivation of liberty because it occurred prior to the time of arraignment and was not one that arose from malicious prosecution as opposed to false arrest." Id.

It is clear from the record that Plaintiff was arrested, released on bond, and this case was later dismissed.[5] Thus, Plaintiff does not plead facts that rise to the level of a significant deprivation of liberty pursuant to legal process. See Kingsland, 382 F.3d at 1236 (affirming dismissal of malicious prosecution claim after dismissal of plaintiff's DUI charges based on negative alcohol results even though she was arrested for DUI and released on bond a day later); McAffee, 2023 WL 2823392, at *3 (affirming dismissal of malicious prosecution claim where plaintiff did not allege he was "subjected to a seizure following an arraignment, indictment, or probable-cause hearing in the state criminal case"). Therefore, Plaintiff fails to bring a false arrest or malicious prosecution claim against Officer Bond for his first traffic stop and arrest.

---

[5] See Screven County Docket – case number STCR2023000038.

### E.     Dismissal of All Claims Arising out of Second Traffic Stop and Arrest

Plaintiff's claims relating to his second traffic stop and arrest also fail on the merits. Plaintiff admits in his complaint he entered a plea of no contest, or in other words, nolo contendere, for the charge of reckless driving on September 25, 2023.  (See doc. no. 1, p. 14.) This type of plea constitutes a conviction.  Hoffman v. Beseler, 760 F. App'x 775, 779 (11th Cir. 2019) (holding defendant's no contest plea is criminal conviction that bars civil claims under Heck); see also Blackmon v. State, 598 S.E.2d 542, 543 (Ga. Ct. App. 2004) (Under Georgia law, "a sentence based on a plea of nolo contendere is a conviction.").  Plaintiff did not appeal the conviction, and the time to do so has passed.  See O.C.G.A. §§ 5-6-33 & 5-6-38 (providing thirty days from entry of appealable decision to file appeal of state court criminal conviction).  Because of this conviction, Plaintiff's claims as to the second arrest and subsequent prosecution are barred under Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court held, "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence" has been reversed, expunged, declared invalid, or called into question by the issuance of a federal writ of habeas corpus.  Id. at 486-87.  In other words, a claim for monetary damages or injunctive relief that challenges Plaintiff's conviction is not cognizable under § 1983.  Heck, 512 U.S. at 483; see also Nelson v. Campbell, 541 U.S. 637, 643 (2004) (explaining that claims challenging the fact of conviction or duration of the sentence "fall within the 'core' of habeas corpus," while claims challenging the conditions of confinement may be brought in a civil rights action under § 1983).

Plaintiff complains the second traffic stop and arrest should have never occurred because he was not driving recklessly, and the police report contained false information.  (See

10

generally doc. no. 1.) Were these claims resolved in Plaintiff's favor, the outcome would inevitably undermine his conviction and sentence, placing the claims "squarely in the purview of Heck." Reilly v. Herrera, 622 F. App'x 832, 835 (11th Cir. 2015); see also Vickers v. Donahue, 137 F. App'x 285, 289-90 (11th Cir. 2005) (*per curiam*) (affirming summary judgment in favor of probation officers accused of falsely submitting affidavits for arrest for probation violation where plaintiff had available post-revocation relief and successful § 1983 claim would imply invalidity of revocation order and sentenced imposed). Plaintiff admits he was convicted by way of no contest plea, and he has not pointed to a "conviction or sentence reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 487. Whatever federal claims he is attempting to make regarding the actions resulting in his conviction from the second arrest are barred.

All claims relating to his second arrest fail for the additional reason that "the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." Brown v. City of Huntsville, Ala., 608 F.3d 724, 734 (11th Cir. 2010); Plaintiff's conviction for reckless driving precludes any relief for the additional reason that "a criminal conviction is 'conclusive of probable cause unless there was fraud.'" El v. Lee, No. 5:19-CV-74 (MTT), 2021 WL 359736, at *4 (M.D. Ga. Feb. 2, 2021) (quoting Kelly v. Serna, 87 F.3d 1235, 1241 (11th Cir. 1996)). "Under the Full Faith and Credit Clause of the Constitution, . . . 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered,'" including in a suit under § 1983. Stephens v. DeGiovanni, 852 F.3d 1298, 1319 (11th Cir. 2017) (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)); Barts v. Joyner, 865 F.2d 1187, 1194 n.5 (11th Cir. 1989).

Plaintiff does not allege any fraud that would undermine his conviction. Indeed, he admits to straddling the center line between two lanes. (See generally doc. no. 1.) While he cites the Georgia "move over law" as justification for this unusual and dangerous driving maneuver, nothing in this law permits a driver to straddle the center line between two lanes. See O.C.G.A. § 40-6-16 *et seq*. Moreover, Plaintiff admitted to Officer Spires that he drank beer and took psych medicine. (Id. at 10.)

In sum, Plaintiff's state court conviction bars any false arrest claim under § 1983 as to his second traffic stop and arrest. See Stephens, 852 F.3d at 1320 (affirming dismissal of Plaintiff's § 1983 false arrest claim after he pled *nolo contendere* in state court to driving without a license); El, 2021 WL 359736, at *5 ("[B]ecause [Plaintiff] was convicted of speeding and obstruction, and he has not come forward with evidence that he was convicted due to fraud, there is conclusive evidence that probable cause existed at the time of his arrest."); see also May v. Morgan Cnty., 499 F. Supp. 3d 1294, 1306 (M.D. Ga. 2020) (holding a conviction "conclusively establishes probable cause" that bars malicious prosecution claim for which lack of probable cause is an element).

### F. The Court Should Abstain Hearing All Claims Arising Out of the Third Traffic Stop and Arrest Under the Younger Doctrine

Because the charges arising out of Plaintiff's third traffic stop and arrest remain pending in Screven County Superior Court, dismissal is warranted under the Younger abstention doctrine. Investigations and charging decisions during state criminal proceedings belong to state authorities. The question of whether a federal court should abstain from interfering with a state judicial proceeding under the principle of Younger v. Harris, 401 U.S. 37 (1971), must be considered in three parts: "first, do [the proceedings] constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there

12

an adequate opportunity in the state proceedings to raise constitutional challenges." 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003). Furthermore, while Younger involved a federal suit seeking equitable relief in the form of an injunction of the ongoing state proceedings, Younger abstention extends to cases involving § 1983 claims for damages. See Boyd v. Georgia, 512 F. App'x 915, 917-18 (11th Cir. 2013) (affirming dismissal without prejudice, pursuant to Younger abstention, of § 1983 complaint seeking monetary damages).

All three factors weigh in favor of abstention. First, public records confirm what the complaint implies, i.e., state proceedings are ongoing.[6] Cf. Steffel v. Thompson, 415 U.S. 452, 462 (1974) ("When no state criminal proceeding is pending at the time the federal complaint is filed, federal intervention does not result in . . . disruption of the state criminal justice system. . . ."). Second, the state proceeding implicates an important state interest in criminally prosecuting such offenses. Absent "extraordinary circumstances," federal courts should not intervene in state criminal prosecutions. Younger, 401 U.S. at 45. Third, Plaintiff has not established the state proceeding would fail to provide an adequate remedy for his federal claim. See 31 Foster Children, 329 F.3d at 1279. Indeed, Plaintiff can raise his claims as well as other constitutional challenges during his criminal proceedings and on appeal. Thus, Plaintiff has not satisfied his burden of showing the state proceeding cannot provide an adequate remedy for his claims.

For these reasons, the Court should abstain from considering Plaintiff's claims as to his third arrest under the Younger doctrine, and such claims should be dismissed without prejudice. See Jackson v. Georgia, 273 F. App'x 812, 813-14 (11th Cir. 2008) (affirming *sua sponte* dismissal due to Younger abstention); Smith v. Mercer, 266 F. App'x 906, 908 (11th

---

[6] See Screven County Docket – case number STCR2023000969.

Cir. 2008) (noting "[a] dismissal pursuant to the Younger doctrine is without prejudice and does not preclude later re-filing of the complaint").

### G. The Court Should Not Exercise Supplemental Jurisdiction Over Any Related State Law Claims

Since Plaintiff has not alleged any viable federal claim concerning his three traffic stops and arrests, the Court declines to exercise supplemental jurisdiction over any state law claims. Pursuant to 28 U.S.C. § 1331, district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." Section 1331 provides the Court authority to rule in a § 1983 case. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims that "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." Id. § 1367(c)(3) (emphasis added).

A District Court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists. See Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000) (directing dismissal of state law claims when case "retains no independent basis for federal jurisdiction"); see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A., 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."). The Court is recommending dismissal of all of Plaintiff's federal claims. Accordingly, any potential state law claims Plaintiff believes he may have should also be dismissed.

### III.     CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Plaintiff's case be **DISMISSED** for failure to state a claim upon which relief may be granted and **CLOSED**.  The Court also **REPORTS** and **RECOMMENDS** any potential state law claims be **DISMISSED WITHOUT PREJUDICE**.

SO REPORTED AND RECCOMENDED this 20th day of December, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA